GOLDMAN, Appellant, vs. SCHMID and wife, Respondents.

*September 12—October 11, 1932.*

For the appellant there was a brief by *Wheeler & Witte* of ·Milwaukee, and oral argument by *Lyman G. Wheeler*.

For the respondents . there was a brief by *Simmons, Walker, Wratten & Sporer* of Racine, and oral argument by *Charles W. Wratten*.

Owen, J. On the 10th day of March, 1930, the defendants were the owners of a farm in Racine county. The plaintiff was a real-estate broker doing business in the city of Milwaukee. On or about the 10th day of March, 1930, the plaintiff caused an "ad" to be published in the Wisconsin News, indicating that he or some of his clients were looking for a farm. Concerning this "ad" plaintiff testified:

"I have not a copy of the 'ad' I put in the paper. I probably advertised for a farm indicating that I have clients for a farm, that I probably have some one looking for a large farm. There was nothing in the paper to indicate the 'ad' was mine but the 'ad' was put in apparently by some one who wanted to buy a large farm. Exhibit B came to me in answer to that 'ad.' If it was a blind 'ad' the answer came to the newspaper and was delivered by it to me, otherwise it was delivered by the postman."

Exhibit B is a letter which the defendants wrote in response to the "ad" describing their farm which they desired to sell. This letter was received by the plaintiff on Monday, and on Saturday he, accompanied by one Thompson, called at the Schmid farm. They looked the farm over, visited with the defendants, and asked if they would like to trade the farm for a bungalow in the city of Milwaukee. The defendants replied that they did not want any city property. Plaintiff then said: "Wouldn't $5,000 and two bungalows clear look good to you?" and the defendants said "Yes." Plaintiff and Thompson then left. Thereafter plaintiff and Thompson brought Mr. and Mrs. Doege and Mr. and Mrs. Krenkel to look at the farm. The Doeges were the parents of Mrs. Krenkel. It was represented that Doege owned a bungalow in the city of Milwaukee and Krenkel owned one. They looked the farm over with a view of trading their bungalows for the farm. In the course of following negotiations they came to the farm, accompanied by plaintiff and Thompson, two or three times, and the Schmids went

to Milwaukee to look over the bungalows occupied by Doege and Krenkel. These negotiations finally resulted in a contract by which the defendants agreed to exchange their farm for the two bungalows and a vacant lot. This contract was entered into on the 9th day of April, 1930; contained the usual covenants for the exchange of abstracts showing good merchantable title; that in case of default by either party $1,000 should be paid to the other as liquidated damages, and that the parties should meet at the Bank of Franksville thirty days from the date thereof to make, execute, and deliver the necessary conveyances to consummate the exchange.

Up to this time there had been no written agreement between plaintiff and defendants for the payment of a broker's commission, as required by sec. 240.10, Stats. Whether there was an oral agreement was a matter of dispute.

After the signing of the contract of exchange plaintiff induced the defendants to sign an agreement by which they agreed to convey to him the vacant lot which they were to receive according to the contract of exchange, and pay him $300 in cash "in consideration of your services rendered in connection with the exchange of our farm property . . . for properties belonging to Harry Krenkel and August W. Doege located in the city of Milwaukee." "This to be accepted by you instead of a cash commission of $1,500."

The defendants received abstracts of the Milwaukee properties. These abstracts were examined and they were found to be defective in numerous respects; but irrespective of minor defects, they disclosed that the Krenkels had no title to their bungalow, neither did Doege or Krenkel have title to the vacant lot. Nevertheless the defendants went to the bank at Franksville on the appointed day to close the transaction. The Doeges and the Krenkels did not

appear, and they have ever since refused to make the exchange, although the evidence is not very clear as to the reason for such refusal. Krenkel testified that his refusal to carry out the agreement was due to a certain extent to the fact that he did not have title to his property.

This action is brought by the plaintiff to recover from the defendants the $1,500 commission which they agreed to pay after the contract of exchange had been entered into. The lower court denied recovery and the plaintiff appeals.

The record presents this situation: The defendants wrote to the plaintiff in response to an "ad" which indicated that they were communicating with some one who desired to buy a farm, presumably for cash. They did not write with a view of employing a real-estate agent; in fact they did not know that they were communicating with a real-estate agent. In response to this communication the plaintiff with one' Thompson calls upon them and talks to them about an exchange of properties. Further negotiations result in the execution of a contract in form but which is valueless to the defendants. It was not a contract which could be specifically enforced. It does not appear that Krenkel was a responsible party so that damages could be collected, and even though he were, the plaintiff, who pretended to be acting as the agent for the defendants, upon which assumption it was his duty to protect their interests, deliberately inserted in the contract of exchange, which was drawn by him, a provision for the payment of $1,000 as liquidated damages in case of the refusal of either party to carry out the contract, which amount was $500 less than he induced the defendants to pay him for his services. The services rendered by him, therefore, were utterly valueless to the defendants through no fault of theirs.

If plaintiff was the agent of the defendants it was his duty to exercise good faith towards them and to protect their interests. He knew that Krenkel did not have title to the

property which he agreed to convey. He told the defendants of this, but said that the property would be conveyed direct to them by the persons who did hold the legal title, and that it would be all right for them to sign. In view of this, he causes them to sign a contract by which they can recover only $1,000 in case of a breach thereof, which is $500 less than that which they agreed to pay him for services he rendered. If he had had a valid commission contract with the defendants from the beginning, his commission was not earned by the consummation of the exchange agreement.

"A broker employed to carry out an exchange of lands does not earn his commission where he brings to his employer a person who assumes to contract as owner, though he is not, which fact the broker knows, and within the few days allowed for performance proves unable to perform his contract, and irresponsible." *Burnham v. Upton,* 174 Mass. 408, 54 N. E. 873. While it was competent for the defendants to bind themselves to pay for services rendered under an oral and, consequently, invalid agreement to pay commissions, where they really acted voluntarily and with knowledge of all material facts (*Elbinger v. Capitol & Teutonia Co.* 208 Wis. 163, 242 N. W. 568), the real-estate agent should not be permitted to recover on such a contract where it so plainly appears that he was faithless to the interests of his principal.

The application of this plain legal principle renders it unnecessary to further review the evidence in this case to show the entire disregard of both plaintiff and Thompson of the interests of those whom they assumed to represent, and the employment of strong salesmanship methods for the purpose of promoting their own interests in the earning of commissions rather than the promotion of the interests of their principals. The legal principle above stated renders an affirmance of the judgment of the lower court imperative.

*By the Court.*—Judgment affirmed.